**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| AMERICAN CHEMICAL SOCIETY,<br><br>    Plaintiff,<br><br>v.<br><br>ACSMOBILE.ORG,<br><br>    Defendant. | Civil Action No. 19-cv-823-RDA-TCB |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), Plaintiff American Chemical Society ("Plaintiff" or "ACS"), by counsel, submits this Memorandum in Support of its Motion for Default Judgment on its claim under the Federal Anti-Cybersquatting Consumer Protection Act against the Internet domain name ACSMobile.org (the "Domain Name"), and in support thereof states as follows:

**I.      INTRODUCTION**

ACS has filed a Motion with this Court under Federal Rule of Civil Procedure 55(b) for a default judgment transferring to it control of the Domain Name. The Domain Name is confusingly similar to and/or dilutive of Plaintiff's ACS Marks, which were distinctive and/or famous at the time that the Domain Name was registered, and which remain distinctive and famous today. The Domain Name was registered by a registrant that lacks any rights or other interest in such Domain Name. The Domain Name was registered in bad faith and/or was being used in bad faith without permission from Plaintiff prior to this Court's preliminary injunction order rendering the Domain Name non-functional.

By its default, the Defendant Domain Name has conceded the truth of the allegations of Plaintiff's Complaint for cybersquatting. There is no genuine issue of fact remaining in this suit, and default judgment should be entered against the Domain Name providing ACS with the requested relief – transfer of the Domain Name to ACS.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff ACS And Its Trademark Rights

Founded over 140 years ago, Plaintiff ACS was chartered by Congress as a federal corporation in 1938. Compl. ¶ 3, ECF No. 1. In designating ACS as a federal corporation, Congress provided, "That the objects of the incorporation shall be to encourage . . . by its meetings, professional contacts, reports, papers, discussions, and publications, to promote scientific interests and inquiry, thereby fostering public welfare and education, aiding the development of our country's industries, and adding to the material prosperity and happiness of our people." *Id.*

ACS began publication of articles reporting on chemical research with the Journal of the American Chemical Society in 1879. *Id.* at ¶ 12. Today, ACS has 185 local sections, more than 150,000 members, and publishes over 50 peer-reviewed journals with cutting-edge articles across a broad spectrum of scientific disciplines. *Id.* The quality, breadth, and scope of ACS's journals are unparalleled, stretching across chemistry, physics, and biology. *Id.* at ¶ 13. Every year, over 100,000 authors and their research teams from the community of scientists worldwide submit their work for consideration in these journals. *Id.* Last year, ACS published more than 45,000 of the most significant submissions. *Id.* In addition, ACS publishes an array of eBooks, spanning the gap between discoveries published in patents and journals. *Id.* at ¶ 14. These peer-reviewed eBooks contain essential research conducted by the world's leading scientists across all disciplines and applications. *Id.* The ACS eBooks now include more than 1,600 eBooks

developed from ACS-sponsored symposia and written by chemistry's brightest minds. *Id.* ACS publishes approximately 35 new eBooks each year. *Id.*

As one of the first publishers to provide online editions of its journal content, ACS has always been at the forefront in the publication of peer-reviewed scientific articles. *Id.* at ¶ 15. Today, virtually all ACS publications are disseminated digitally via electronic licenses over the internet. *Id.* ACS journals and eBooks reside on the publications platform of the ACS website, ACS.org. *Id.* Furthermore, ACS previously owned the ACSMobile.org domain, which it used to distribute mobile optimized content. *Id.* Last year, some 32 million unique visitors came to the ACS publications platform, performed 99 million searches, and made 133 million separate article requests. *Id.*

Noted for their high quality, rapid time to publication, as well as seminal and prevalent citation in future research, ACS journals and eBooks are accessible to authorized users/viewers at more than 5,000 academic, business, and corporate institutions worldwide. *Id.* at ¶ 16. In addition, the Society's 150,000+ members have specified electronic access to articles from ACS journals and eBooks as a benefit of membership. *Id.* In short, ACS provides the global scientific community with cutting-edge research from some of the most trusted and most cited, peer-reviewed publications in the chemical and related sciences. *Id.* at ¶ 17.

ACS promotes and provides its publications to consumers through use of distinctive ACS formative titles that have been registered with the United States Patent and Trademark Office (collectively the "ACS Marks"). *Id.* at ¶ 18. The ACS Marks are *conclusive* or *prima facie* evidence of the validity of the marks and of ACS's exclusive right to use the marks in association with the registered goods/services throughout the United States. *Id.* A schedule

identifying certain of the trademark registrations for the ACS Marks is attached to the Complaint as Exhibit B. *Id.* at ¶ 19 & Ex. B.

Among the registered ACS Marks, the ACS MOBILE mark is registered on the Principal Trademark Register of the U.S. Patent and Trademark Office under incontestable Registration Number 4066681. *Id.* at ¶ 20 & Ex. C. The ACS (and Design) mark is registered on the Principal Trademark Register of the U.S. Patent and Trademark Office under incontestable Registration Number 1082875. *Id.* at ¶ 21. The ACS word mark is also registered on the Principal Trademark Register of the U.S. Patent and Trademark Office under Registration Number 4760116. *Id.* at ¶ 22.

ACS's incontestable federal registration of the ACS MOBILE and ACS Marks are conclusive evidence of the validity of the marks, ACS's ownership of the marks, and of ACS's exclusive right to use the marks in U.S. Commerce. *Id.* at ¶ 24; 15 U.S.C. § 1115(b).

**B.      Defendant Domain Name**

The owner of the Domain Name is unknown and is not identified in the WHOIS database. Compl. at ¶ 6. The Defendant Domain Name represents an unauthorized colorable imitation of the ACS Marks, consisting of ACS's registered, incontestable ACS MOBILE Mark with the mere addition of the generic .ORG top-level domain. *Id.* at ¶ 25. The use of close approximations of the ACS Marks within the Defendant domain name is without authorization from ACS. *Id.* at ¶ 27.

**C.      The Instant Proceeding**

Plaintiff filed this action against Defendant Domain Name on June 21, 2019. *See* ECF No. 1. ACS seeks the transfer of the Domain Name to ACS for violation of the Federal Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1).

On July 5, 2019, ACS provided the registered owner of the Defendant Domain Name with notice of the alleged violation and a copy of the Complaint. *See* 7/5/2019 Declaration of Alexander B. Owczarczak (ECF No. 8-1) ¶ 6 & Attach. 1. The notice was sent to the postal address provided in the domain name registration record for the Domain Name. *Id*.

On July 5, 2019, ACS filed a Motion for Service by Publication. *See* ECF Nos. 6–8. On July 11, 2019, the Court granted ACS's Motion and ordered ACS to publish the Order providing notice to the Defendants in *The Washington Post* or *The Washington Times* once within fourteen (14) days after the entry of the Order. *See* ECF No. 20. The Order further directed ACS to file a declaration within twenty (20) days after the entry of the Order describing the steps that ACS had taken to comply with the Order. *Id.*

ACS caused the Order of Service by Publication to be published in *The Washington Times* on July 15, 2019. *See* 7/16/2019 Declaration of Alexander B. Owczarczak (ECF No. 25). ACS filed its declaration describing compliance with the Order on July 16, 2019. *Id.*

On July 5, 2019, ACS also moved for a preliminary injunction. *See* ECF Nos. 10, 11, 15. The Court held an evidentiary hearing on ACS's motion for preliminary injunction on July 12, 2019, and granted the motion the same day. ECF Nos. 21, 22. Pursuant to the injunction, Public Interest Registry placed the Defendant Domain on registryHold/serverHold status, rendering the Defendant Domain non-resolving.

On August 7, 2019, the Clerk entered a default against the Domain Name. *See* ECF No. 29.

### III. ARGUMENT

#### A. This Court Has Jurisdiction to Enter Default Judgment Against the Defendant Domain Name.

The Court has jurisdiction to grant Plaintiff's motion and enter default judgment against the Domain Name because the Court has subject matter jurisdiction over this action as well as *in rem* jurisdiction over the Domain Name. The Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121(a) (all federal trademark actions), 28 U.S.C. §§ 1331 (federal question jurisdiction), and 1338(a) (any act of Congress relating to patents, copyrights, and trademarks). *See* Compl. ¶ 8.

This Court has *in rem* jurisdiction over the Domain Name pursuant to 15 U.S.C. § 1125(d)(2)(A)(i)(I) because ACS, through due diligence, was unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A) by sending notice of the alleged violation and intent to proceed and publishing notice of the action as directed by the Court. Compl. ¶¶ 9, 10. *In rem* jurisdiction and venue are proper in this district pursuant to 15 U.S.C. § 1125(d)(2)(C) because the .ORG domain name registry operator, Public Interest Registry, is in this judicial district, and the Defendant Domain Name is a .ORG domain name. *See* Compl. ¶ 11.

#### B. The Clerk Appropriately Entered Default as to the Domain Name.

The Clerk of this Court enters a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The Clerk's entry of default against the Domain Name was required here because, as the docket reflects, the time for filing a responsive pleading had passed.

On July 5, 2019, ACS filed a Motion for Service by Publication. *See* ECF Nos. 6–8. On July 11, 2018, the Court granted ACS's Motion and ordered ACS to publish the Order providing notice to the Defendant in *The Washington Post* or *The Washington Time* once within fourteen (14) days after the entry of the Order. *See* ECF No. 20. The Order further directed ACS to file a declaration within twenty (20) days after the entry of the Order describing the steps that ACS had taken to comply with the Order. *Id.*

ACS caused the Order of Service by Publication to be published in *The Washington Times* on July 15, 2019. *See* 7/16/2019 Declaration of Alexander B. Owczarczak (ECF No. 25). ACS filed its declaration describing compliance with the Order on July 16, 2019. *Id.* The Defendant Domain Name has failed to answer or otherwise respond to Plaintiff's Complaint.

These facts, supported by the uncontroverted declarations filed in this action, clearly demonstrate that the Defendant Domain Name (and anyone acting on its behalf) had constructive notice (if not actual notice) of this suit, yet failed to enter an appearance or otherwise defend this action. Therefore, the Clerk appropriately entered default as to the Defendant pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.

    **C.**    <u>**Plaintiff is Entitled to a Default Judgment Against Defendant.**</u>

By failing to appear or otherwise defend against the Complaint, Defendant is deemed to have admitted every allegation therein, and the Court must only determine whether the Complaint properly states a claim for relief. *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). This Court should conclude that Defendant has admitted the well-pled allegations set forth in Plaintiff's Complaint that establish Plaintiff's entitlement to a transfer of the Domain Name. *See Agri-Supply Company, Inc. v. Agrisupply.com*, 457 F. Supp. 2d 660, 664 (E.D. Va. 2006).

The ACPA provides that a person is liable to a trademark owner if that person has a bad faith intent to profit from the trademark owner's mark and the person registers, traffics in, or uses a domain name that is identical or confusingly similar to or dilutive of that mark. 15 U.S.C. § 1125(D)(1)(a); *see also Central Source LLC v. annualcreditreport.com*, 2014 WL 3811162 at * 6 (E.D. Va. Aug. 1, 2014) (citing *People for the Ethical Treatment of Animals v. Doughnet*, 263 F.3d 359, 367 (4th Cir. 2001) (hereinafter *Fundacion I*)); *Agri-Supply Co., Inc.*, 457 F. Supp. 2d at 662-63. The Complaint pleads both that the Domain Name is confusingly similar to ACS's distinctive and/or famous ACS Marks, including multiple incontestable marks, and that the registration and use of the Domain Name was in bad faith. *See* Compl. ¶¶ 25, 26, 29–33, 38.

1. **The Distinctiveness of the ACS Marks.**

The ACS Marks are distinctive and famous and were distinctive and famous at the time of registration of the Domain Name. 15 U.S.C. §§ 1125(d)(1)(B)(i)(IX). Since at least as early as 1923, ACS has used the ACS Marks in interstate commerce to provide its publications containing cutting-edge scientific research. Compl. ¶¶ 3, 12–24. Through promotion of the publications and other services provided under the ACS Marks by ACS, the ACS Marks have become famous and/or distinctive throughout the United States in connection with ACS's publications and services. Consumers have come to distinguish and recognize the legitimacy of ACS's publications and services as a result of the use and widespread promotion of the ACS Marks. ACS's incontestable federal registration for the ACS MOBILE and ACS Marks is *conclusive* evidence of the validity of the marks, ACS's ownership of the marks, and of ACS's exclusive right to use the marks in U.S. Commerce. *Id.* at ¶ 24; 15 U.S.C. § 1115(b). This Court has previously recognized the distinctiveness and validity of the ACS Marks. *See, e.g., American Chemical Society v. John Does 1-99*, 17-cv-00726-LMB-JFA ECF No. 36 (Nov. 3,

2017) (granting motion for default judgment in favor of ACS on copyright and trademark claims).

### 2. The Defendant Domain Name Is Confusingly Similar to the ACS Marks.

The Defendant Domain Name is confusingly similar to the ACS Marks pursuant to 15 U.S.C. §§ 1125(d)(1)(A)(ii)(I). Under the ACPA, courts look to the facial similarity of the domain to the relevant marks to determine confusing similarity. *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 783 (8th Cir. 2004) ("It is the challenged domain name and the plaintiff's mark which are to be compared."). The confusing similarity standard is satisfied when a domain name is virtually identical to the plaintiff's mark. *See Agri-Supply Co.*, 457 F. Supp. 2d at 663.

The Defendant Domain Name closely resembles Plaintiff's ACS MOBILE mark, including the entire mark while merely adding the generic .ORG top-level domain to the end. *See, e.g*, *Montblanc-Simplo GMBH v. Montblanc-outlet.co*, 2016 WL 9175602 (E.D. Va. Oct. 12, 2016). The mere addition of a top-level domain signifier, such as .ORG, to a protected trademark does not diminish the confusing similarity. *See Investools, Inc. v. Investtools.com*, No. 1:06-cv-210, 2006 WL 2037577, at *3 (E.D. Va. July 17, 2006) (citing *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999)); *Nissan Motor Co. v. Nissan Computer Corp.*, 204 F.R.D. 460, 466-67 (C.D. Cal. 2001) ("[A]ny permutations one may derive from adding a top-level domain . . . to the second-level domain 'nissan' are indistinguishable as a matter of law"). Thus, it is clear that the Domain Name is confusingly similar to the ACS Marks and there is a bad faith intent to profit from the similarity of the Domain Name to the ACS Marks as discussed below.

### 3. The Registrant's Bad Faith.

The ACPA lists several non-determinative factors that a court may consider when determining bad faith, including a defendant's intellectual property rights in the domain name;

the extent to which the name consists of the defendant's legal name; a defendant's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; a defendant's intent to divert consumers from the mark owner's website in such a way that could harm the goodwill of the mark; and a defendant's provision of misleading or false contact information when applying for registration of the domain name. 15 U.S.C. §§ 1125(d)(1)(B)(i)(I), (II), (IV), (V), (VII). "The factors are given to courts as a guide" and need not be exhaustively considered in every case. *Lamparello v. Falwell*, 420 F.3d 309, 319-20 (4th Cir. 2005).

Here, the facts support a finding of bad faith by the registrant of the Defendant Domain Name. The registrant has no apparent intellectual property rights in the Domain Name, which differs only by the addition of the generic .ORG top-level domain to Plaintiff's registered, incontestable ACS MOBILE Mark. *See* Compl. ¶¶ 6, 18–23; 25; 26; 15 U.S.C. §§ 1125(d)(1)(B)(i)(I); *see also Fundacion I*, 2014 WL 3811162 at *7. Given the nature of the ACS Marks, the Defendant Domain Name does not appear to reflect the legal name(s) of the registrant. Compl. ¶ 38; 15 U.S.C. §§ 1125(d)(1)(B)(i)(II); *Fundacion I*, 2014 WL 3811162 at *8. On July 5, 2019, ACS provided the owner of the Defendant Domain Name registration with a copy of the Complaint and notice of ACS's intent to proceed *in rem* under the ACPA. *See* 7/5/2019 Declaration of Alexander B. Owczarczak (ECF No. 4-1) ¶ 6 & Attach. 1. The notice was sent to the postal address provided in the domain name registration record for the Defendant Domain Name. *Id*. Nevertheless, no one has filed a response to the Complaint on behalf of the Defendant Domain Name. Moreover, even upon entry of the preliminary injunction, which disabled the Defendant Domain Name, no one has come forward in attempt to re-enable the Defendant Domain Name.

The registrant has not engaged in bona fide noncommercial or fair use of the ACS Marks in a site accessible under the Domain Name. Compl. ¶¶ 22; 24–27; 15 U.S.C. § 1125(d)(1)(B)(i)(IV). That registrant has not engaged in bona fide noncommercial or fair use of the ACS Marks is distinctly evident based on the fact that registrant used the Defendant Domain Name to display pornographic material. Compl. ¶¶ 2, 31, 34.

The registrant of the Defendant Domain Name has registered and used the domain name with intent to divert consumers away from ACS's online location at ACS.org, for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the Domain Name. Compl. ¶¶ 23; 28–30; 15 U.S.C. § 1125(d)(1)(B)(i)(V); *Fundacion I*, 2014 WL 3811162 at *8. It is particularly clear that the Defendant Domain Name was registered to divert traffic from ACS's legitimate online locations due to the fact that the Defendant Domain Name was previously owned by ACS and used to display legitimate ACS content.

Finally, the registrant also concealed his or her identity when registering the Defendant Domain Name, thus further demonstrating a bad faith intent to profit from Plaintiff's ACS Marks. Compl. ¶ 36; 15 U.S.C. § 1125(d)(1)(B)(i)(VII); *see Int'l Bancorp, LLC v. Societe Des Baines De Mer Et Du Cercle Des Estrangers A Monaco*, 192 F. Supp. 2d 467, 486-87 (E.D. Va. 2002) (finding that use of aliases "creates an atmosphere of deception" that supports finding of bad faith); *Montblanc-Simplo GmbH v. AChatStyloMontblanc.com*, No. 1:13-cv-1013, 2014 WL 107395, at *5 (E.D. Va. Jan. 3, 2014) (finding bad faith where true identity and correct service address have not been provided).

  **D.**   <u>**The Domain Name Should Be Transferred to ACS.**</u>

The ACPA provides that the remedy for an *in rem* proceeding is either the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark. 15

U.S.C. § 1125(d)(2)(D)(i). The domain name registry for the Defendant Domain Name is maintained by Public Interest Registry within this judicial district and is thus subject to the Court's jurisdiction. Accordingly, the Court may properly enter a default judgment and order the .ORG domain name registry and any relevant domain name registrar(s) to transfer ownership of the Defendant Domain Name to Plaintiff. *See, e.g.*, *America Online, Inc. v. AOL.org*, 259 F. Supp. 2d 449, 453-55 (E.D. Va. 2003); *Fundacion I*, 2014 WL 3811162 at *8.

## IV. CONCLUSION

For the foregoing reasons, ACS respectfully requests that the Court grant this Motion for Default Judgment and order that Public Interest Registry, the operator of the .ORG registry, change the registrar of record for the Defendant Domain Name to Plaintiff's registrar of choice, Network Solutions LLC, and further order that Network Solutions LLC take the necessary steps to have Plaintiff ACS listed as the registrant for the Defendant Domain Name. ACS further requests that the Court order that, upon transfer of the Defendant Domain Name to Plaintiff's registrar of choice, Network Solutions LLC, the Preliminary Injunction entered on July 12, 2019 be automatically dissolved so that the Domain Name, once transferred to ACS, will be operable. *See, e.g.*, *Richemont Int'l SA v. Chen*, Case No. 12-cv-6689, ECF No. 23 at 7 (S.D.N.Y. Sept. 25, 2012) *and* ECF No. 33 at 7 (S.D.N.Y Jan. 4, 2013) (granting temporary restraining order requiring deactivation of domain names and transferring same to plaintiff upon entry of default judgment).

Dated: August 13, 2019     By:     /s/ Attison L. Barnes, III
                                                                             Attison L. Barnes, III (VA Bar No. 30458)
                                                                             David E. Weslow (pro hac vice)
                                                                             Alexander B. Owczarczak (pro hac vice)
                                                                             WILEY REIN LLP
                                                                             1776 K St. NW
                                                                             Washington, DC 20006
                                                                             (202) 719-7000 (phone)

(202) 719-7049 (fax)
abarnes@wileyrein.com
dweslow@wileyrein.com
aowczarczak@wileyrein.com

*Counsel for Plaintiff*
*American Chemical Society*

## **CERTIFICATE OF SERVICE**

I, Attison L. Barnes, III, hereby certify that on August 13, 2019, I electronically filed the foregoing by using the CM/ECF system. I also sent a copy to the registrant of the ACSMobile.org domain name c/o the registrar of the domain name.

   /s/ Attison L. Barnes, III
Attison L. Barnes, III, Esq.
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049
abarnes@wileyrein.com

*Counsel for Plaintiff
American Chemical Society*