## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| AMERICAN CHEMICAL SOCIETY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-823 (RDA/TCB) |
| | ) | |
| ACSMOBILE.ORG | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### REPORT AND RECOMMENDATION

THIS MATTER comes before the undersigned on American Chemical Society's ("Plaintiff") Motion for Default Judgment against <ACSMobile.org> ("Defendant" or "Defendant Domain Name") (Dkt. 31).[1] For the reasons articulated below, the undersigned U.S. Magistrate Judge recommends that Plaintiff's Motion for Default Judgment be granted.

### I. BACKGROUND

**A.    Procedural Posture**

Plaintiff filed this lawsuit to remedy the unlawful use of its trademarks by Defendant Domain Name. (Compl. ¶ 2.) Plaintiff filed a Verified Complaint on June 20, 2019, bringing an *in rem* action against Defendant and seeking transfer of the domain name to Plaintiff pursuant to the Federal Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d) (2018). (*Id.* ¶ 2.) Plaintiff later filed a Motion for Preliminary Injunction. (Dkt. 10.) In granting

---

[1] The relevant filings before the undersigned include Plaintiff's Verified Complaint (Dkt. 1) ("Compl."); Plaintiff's Motion for Default Judgment (Dkt. 31) ("Mot. Default J."); Memorandum of Points and Authorities in Support of Plaintiff's Motion for Default Judgment (Dkt. 32); Declaration of Alexander B. Owczarczak (Dkt. 25) ("Owczarczak Decl."); and all attachments and exhibits submitted with those filings.

the preliminary injunction, the Court directed (1) the Public Interest Registry to place the <ACSMobile.org> domain name on "registryHold/serverHold or such other status to render the name/site non-resolving until further order"; (2) Plaintiff to post a bond in the amount of $500.00; and (3) Plaintiff to provide a copy of the Order to the current registrar of <ACSMobile.org> and to the Public Interest Registry. (Dkt. 22.) Plaintiff complied by posting a $500.00 bond on July 16, 2019 (Dkt. 27) and the Public Interest Registry placed Defendant Domain Name on "registryHold/serverHold status," rendering the domain name nonresolving. (Mem. Supp. at 5.)

After Defendant failed to appear or otherwise respond in this matter, Plaintiff requested the Clerk's entry of default on August 6, 2019 (Dkt. 28), and the Clerk entered default on August 7, 2019 (Dkt. 29). Plaintiff then filed its Motion for Default Judgment (Dkt. 31) and the accompanying Memorandum in Support (Dkt. 32). After representatives for Defendant failed to appear or otherwise respond at the September 13 hearing, the undersigned took the matter under advisement to issue this Report and Recommendation.

### B.     Jurisdiction and Venue

Before the Court can render default judgment, it must have (1) subject-matter jurisdiction, (2) personal or *in rem* jurisdiction, and (3) proper venue.  First, the undersigned finds that this Court has federal question subject-matter jurisdiction. Plaintiff brings this cause of action pursuant to the ACPA, a federal trademark statute. (Compl. ¶¶ 7-8.) This Court therefore has original jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. § 1121(a), and 28 U.S.C. § 1338(a).

Second, the undersigned finds that the Court has proper *in rem* jurisdiction over Defendant Domain Name pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii). This subsection allows a plaintiff to file an *in rem* civil action against a domain name if the plaintiff is unable (1) "to

2

obtain *in personam* jurisdiction over a person who would have been a defendant in a civil action"; or (2) find the person who would have been the defendant through due diligence. 15 U.S.C. § 1125(d)(2)(A)(ii)(I)-(II). Here, as discussed further below, Defendant Domain Name's registrar is concealing the owner's identity. (Compl. ¶ 9.) Despite Plaintiff's due diligence—including sending notice of the alleged violation and its intent to proceed *in rem*, and publishing notice of this matter in *The Washington Times*—Plaintiff never found the person who would have been the defendant and therefore could not obtain *in personam* jurisdiction over that person. (*See id.* ¶¶ 9-10; Mem. Supp. at 6; Owczarczak Decl. ¶¶ 4-5, Ex. A.) Therefore, this Court has proper *in rem* jurisdiction over Defendant Domain Name pursuant to the ACPA.

Lastly, Plaintiff filed this lawsuit in the proper venue. Under 15 U.S.C. § 1125(d)(2)(C)(i), the domain name's "situs" is in the judicial district where "the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located." 15 U.S.C. § 1125(d)(2)(C)(i). Here, venue is proper because (1) the Public Interest Registry—the registry operator for any ".ORG" domain name—is located within the Eastern District of Virginia; and (2) Defendant Domain Name is a ".ORG" domain name. (Compl. ¶ 11; Mem. Supp. at 6.)

## C. Service of Process

Before the Court can render default judgment, it must be satisfied that the defaulting party has been properly served. Federal Rule of Civil Procedure 4(n)(1) allows a federal court to assert jurisdiction over property if a federal statute authorizes it. Fed. R. Civ. P. 4(n)(1). The Rule further provides that the defendant must be given notice of the lawsuit "as provided in the [federal] statute or by serving a summons under [Rule 4]." Fed. R. Civ. P. 4(n)(1). Under the ACPA, a plaintiff filing an *in rem* action must provide notice via service of process to the

3

registrant of the allegedly infringing domain name. 15 U.S.C. § 1125(d)(2)(A)-(B). If a plaintiff is unable to find or obtain *in personam* jurisdiction over the person who would have been the defendant, then the plaintiff can effect service of process by (1) sending notice of the alleged violation and intent to proceed to the registrant of the domain name at the postal or e-mail address provided to the registrar and (2) publishing notice as directed by the court. *Id.* § 1125(d)(2)(A)(ii), (B).

Here, Plaintiff has demonstrated that Defendant had at least constructive notice of this lawsuit. Plaintiff first mailed notice of the alleged violation and a copy of the Complaint to Defendant Domain Name's postal address provided in the registration record. (Mem. Supp. at 5; Dkt. 8-1 ¶ 6, Attach. 1.) Second, Plaintiff filed a Motion for Order to Publish Notice of Action on July 5, 2019. (*See* Dkts. 6-8.) This Court granted Plaintiff's Motion on July 11, 2019 and ordered Plaintiff to publish the Order in *The Washington Post* or *The Washington Times* once within fourteen (14) days after the entry of the Order. (Dkt. 20.) The Court's Order further required Plaintiff to file a declaration within twenty (20) days after the entry of the Order describing the steps it took to comply. (*Id.*) Plaintiff complied by (1) causing the Order to be published in *The Washington Times* on July 15, 2019 and (2) filing a declaration describing its compliance with the Order on July 16, 2019. (Owczarczak Decl. ¶¶ 5-6, Ex. A.) The undersigned finds that Plaintiff fulfilled the steps under the ACPA to effect service of process.

## II. FINDINGS OF FACT

Upon a full review of the pleadings and record in this case, the undersigned finds that Plaintiff has established the following facts. First, Plaintiff possesses intellectual property rights. In 1938, Congress chartered Plaintiff as a federal corporation to advance scientific inquiry, discussion, and education. (Compl. ¶ 3.) Now, Plaintiff is a leader in the global scientific

4

community and publishes a vast amount of peer-reviewed research. (*Id.* ¶¶ 12-17.) Plaintiff publishes eBooks and over fifty (50) peer-reviewed journals in different scientific disciplines, including chemistry, physics, and biology. (*Id.* ¶¶ 12-14.) Plaintiff's eBook collection includes more than 1,600 books, and it publishes approximately thirty-five (35) new eBooks each year. (*Id.* ¶ 14.) Plaintiff publishes "virtually all" of its publications digitally over its website, <ACS.org>. (*Id.* ¶ 15.) Plaintiff's website receives a staggering amount of internet traffic: last year alone, approximately 32 million unique individuals visited Plaintiff's website, performing 99 million searches and submitting 133 million article requests. (*Id.*) Furthermore, Plaintiff's publications are accessible to authorized users at more than 5,000 academic, business, and corporate institutions worldwide. (*Id.* ¶ 16.)

Plaintiff distributes published works through distinctive formative titles that it has registered with the U.S. Patent and Trademark Office ("USPTO"). (*Id.* ¶ 18.) Specifically, "ACS MOBILE" is one of Plaintiff's registered marks on the USPTO Principal Trademark Register. (*See id.* ¶ 20, Ex. C.) It is also important to note that Plaintiff previously owned the domain name <ACSMobile.org>, where it used to distribute "mobile optimized" content. (*Id.* ¶ 15.) Further, the ACS design mark and the ACS word mark are also registered on the USPTO Principal Trademark Register. (*See id.* ¶¶ 21-23, Ex. C.)

Second, Defendant is infringing on Plaintiff's intellectual property rights. Defendant, <ACSMobile.org>, is an internet domain name that houses pornographic material. (*Id.* ¶¶ 2, 6, 25.) Defendant therefore utilizes Plaintiff's registered "ACS MOBILE" mark with the addition of the ".ORG" top-level domain attached at the end. (*Id.* ¶ 25.) Defendant is using Plaintiff's mark without its authorization and without any apparent intellectual property rights in the domain name. (*Id.* ¶¶ 27-28.) It also appears that the registrant has never made a bona fide

5

noncommercial or fair use of Plaintiff's mark, nor has it engaged in any bona fide offering of goods or services under the domain name. (*Id.* ¶¶ 29, 32.) Furthermore, Defendant's use of Plaintiff's mark in the domain name does not appear to constitute the current owner's name, the name of any individual in privity with the owner, a description of goods or services associated with the domain, or his or her geographic origin. (*Id.* ¶ 38.)

Third, the undersigned finds that Defendant is trying to conceal his or her identity. According to the WHOIS database of domain name registrations, Defendant Domain Name is registered by the registrar "Danesco Trading Ltd." to a registrant identified as "PROTECTSERVICE, LTD." (*Id.* ¶ 6, Ex. A.) The undersigned's review of the submitted domain name registration record for <ACSMobile.org> confirms that (1) the registrant has provided misleading or false contact information when applying for and maintaining the registration of the domain name, and (2) the registrar—Danesco Trading Ltd.—is concealing the true owner's information. (*Id.* ¶¶ 6, 36-37.)

Finally, Defendant's unauthorized use of the domain name harms Plaintiff. Due to Plaintiff's previous ownership of the domain name and the fact that it currently houses pornographic material, there is a strong likelihood that the website now displayed deceives the public into thinking that Plaintiff is affiliated with it. (*See id.* ¶¶ 33-35.) This could harm the goodwill and value associated with Plaintiff's marks, as well as cause confusion as to the source of the marks. (*Id.* ¶¶ 30-31, 33-35.) Furthermore, the undersigned finds that Defendant intended to divert Plaintiff's internet traffic and consumers away from its legitimate website by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the domain name. (*Id.* ¶ 30.) Defendant does so for commercial gain, or to disparage the marks by creating confusion. (*Id.*)

### III. EVALUATION OF THE PLAINTIFF'S COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (citations omitted).

#### A.    Legal Standard

Generally, the ACPA provides for a party to be liable to a trademark owner if that party has a bad-faith intent to profit from the owner's mark and registers, traffics in, or uses a domain name that is identical, confusingly similar to, or dilutive of that mark. 15 U.S.C. § 1125(d)(1)(a); *see also Cent. Source LLC v. annualcreditreport.com*, No. 1:14-cv-304, 2014 WL 3811162, at *6 (E.D. Va. Aug. 1, 2014) (citing *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001)). Accordingly, the ACPA allows the owner of a mark to file an *in rem* action against a domain name if it violates the owner's trademark rights, and if the owner satisfies the procedural provisions outlined above. *See* 15 U.S.C. § 1125(d)(2)(A). In an *in rem* action, the remedies are limited to forfeiture, cancellation, or transfer of the infringing domain name to the owner of the mark. *Id.* § 1125(d)(2)(D).

To be entitled to relief, the plaintiff must prove a violation of "any right of the owner of a

7

mark," which encompasses rights against cybersquatting under § 1125(d)(1). *Id.* § 1125(d)(2)(A); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 228, 232 (4th Cir. 2002). The owner of a mark may therefore be entitled to *in rem* relief upon proving a violation of section 1125(d)(1), which creates civil liability for registering, trafficking in, or using a domain name that is "identical or confusingly similar" to a plaintiff's mark, with a bad-faith intent to profit from that mark. 15 U.S.C. § 1125(d)(1)(A). In sum, to establish such an ACPA violation, a plaintiff must establish: (1) its ownership of a valid and protectable mark; (2) the registrant's use of a domain name that is "identical or confusingly similar" to the plaintiff's mark; and (3) the registrant's bad-faith intent to profit from the mark. *See id.* Here, Plaintiff seeks relief under § 1125(d)(1).

### 1. Plaintiff Possesses a Valid and Protectable Mark

Plaintiff must first demonstrate that it has protectable rights in its marks. Further, Plaintiff's marks must be distinctive and famous at the time of Defendant Domain Name's registration. *See id.* Here, Plaintiff uses its marks in promoting its publications, scientific research, and other services throughout the United States. (Mem. Supp. at 8.) Consumers have come to associate Plaintiff's marks with the legitimacy of its numerous publications, making Plaintiff's marks distinctive and famous at the time of Defendant Domain Name's registration. (*Id.*)

Furthermore, the ACPA protects Plaintiff's marks because they are registered with the USPTO. The ACPA protects registered marks. *See* 15 U.S.C. § 1125(d)(2)(A)(i). Registration serves as conclusive or *prima facie* evidence that a mark has acquired distinctiveness. *Am. Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001). Here, Plaintiff has registered its marks with the USPTO. (Compl. ¶¶ 18-24, Ex. C.) Plaintiff's incontestable federal registration

for its marks is therefore conclusive evidence of their validity, Plaintiff's ownership of the marks, and Plaintiff's exclusive right to use the marks in U.S. commerce. (*Id.* ¶ 24; *see* 15 U.S.C. § 1115(b).) For these reasons, the undersigned finds that Plaintiff's marks are valid and protectable under the ACPA.

### 2. Defendant Domain Name Is Confusingly Similar to Plaintiff's Mark

Under the ACPA, Plaintiff must show that Defendant Domain Name is either identical, confusingly similar to, or dilutive of a distinctive mark owned by Plaintiff. 15 U.S.C. § 1125(d)(1)(A); *see Doughney*, 263 F.3d at 367. If Defendant Domain Name and Plaintiff's marks are virtually identical, then the marks are "confusingly similar" under the ACPA. *See Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 664 (E.D. Va. 2006); *see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995) ("[I]n evaluating the similarity of two marks … the marks need only be sufficiently similar in appearance." (citation omitted)). When comparing allegedly infringing domain names to registered trademarks, merely adding a top-level domain signifier (such as ".ORG") to an otherwise protected trademark does not diminish the confusing similarity. *See Investools, Inc. v. Investtools.com*, No. 1:06cv210, 2006 WL 2037577, at *3 (E.D. Va. July 17, 2006).

Here, Defendant Domain Name is remarkably similar to Plaintiff's "ACS MOBILE" mark. (*See* Compl. ¶ 26, Ex. C.) Defendant Domain Name includes Plaintiff's entire mark while simply adding ".ORG" to the end of the domain name. (Mem. Supp. at 9; Compl. ¶ 26, Ex. C.) Because simply adding ".ORG" to Plaintiff's protected mark does nothing to diminish confusion, the undersigned finds that Defendant Domain Name and Plaintiff's mark are confusingly similar.

### 3.   Defendant's Bad Faith

Lastly, the undersigned finds that Defendant acted in bad faith. The relevant factors for this determination include: (1) a defendant's intellectual property rights in the domain name; (2) the extent to which the name consists of the defendant's legal name; (3) a defendant's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (4) a defendant's intent to divert consumers from the mark owner's website in a way that could harm the goodwill of the mark, and (5) a defendant's provision of misleading or false contact information when applying for registration of the domain name. 15 U.S.C. §§ 1125(d)(1)(B)(i)(I)-(II), (IV)-(V), (VII). Courts may use these factors as a guide and are not required to exhaustively consider them. *Lamparello v. Falwell*, 420 F.3d 309, 319-20 (4th Cir. 2005).

First, Defendant has no seeming intellectual property rights in the domain name. As mentioned above, Defendant simply adds ".ORG" to Plaintiff's registered mark. (*See* Mem. Supp. at 9; Compl. ¶¶ 18-23, 25-26, Ex. C.) Second, Defendant Domain Name does not appear to reflect the legal name (or names) of the registrant. It is worth noting that Plaintiff sent a copy of the Complaint and notice of this *in rem* action to the owner of Defendant Domain Name's registration. (Dkt. 8-1 ¶ 6, Attach. 1.) In addition, this Court entered a preliminary injunction rendering Defendant Domain Name nonresolving. (Dkt. 22.) No party has filed a response to the Complaint or attempted to reenable the domain name, which indicates that Defendant Domain Name does not have a connection with the registrant's identity or name.

Third, Defendant has not engaged in any bona fide noncommercial or fair use of Plaintiff's mark in a site accessible under the domain name. (Compl. ¶ 29.) Specifically, Defendant Domain Name houses pornographic material, which is for commercial purposes and

does not qualify as "fair use." (*Id.* ¶¶ 2, 31, 34; *see also* 15 U.S.C. § 1125(d)(1)(B)(i)(IV).) Fourth, the undersigned concludes that Defendant Domain Name's registrant used and registered the domain with the intent to divert consumers away from Plaintiff's legitimate website for commercial gain. (*See* Compl. ¶ 35.) Because Plaintiff previously owned and used Defendant Domain Name, it is apparent that Defendant tried to create a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the domain name to deceive consumers and obtain internet traffic. (*Id.* ¶¶ 30, 33; *see also* 15 U.S.C. § 1125(d)(1)(B)(i)(V).)

Finally, Defendant tried to conceal his or her identity when registering Defendant Domain Name. As mentioned above, the WHOIS database shows that Defendant Domain Name is registered by the registrar "Danesco Trading Ltd." to a registrant identified as "PROTECTSERVICE, LTD." (Compl. ¶ 6, Ex. A.) The undersigned found above that this registrant is concealing the identify of Defendant Domain Name's owner. Accordingly, Defendant's actions only further demonstrate that he or she acted in bad faith. *See Montblanc-Simplo GmbH v. AChatStyloMontblanc.com*, No. 1:13-cv-1013, 2014 WL 107395, at *6 (E.D. Va. Jan. 3, 2014) (finding bad faith in part because the registrant supplied incorrect contact information and had an undeliverable postal address). Ultimately, upon consideration of these factors, the undersigned concludes that Defendant acted in bad faith for purposes of the ACPA.

## B. Conclusion

Because Plaintiff has satisfied the substantive and procedural provisions of 15 U.S.C. § 1125(d), the Court may order the forfeiture or cancellation of Defendant Domain Name or transfer ownership of Defendant Domain Name to Plaintiff. *See* 15 U.S.C. § 1125(d)(1)(C), (2)(D)(i).

## IV. REQUESTED RELIEF

### A.    Transferring Domain Name

As mentioned above, the ACPA provides for two possible remedies in an *in rem* proceeding against an infringing domain name: either (1) forfeiture or cancellation of the domain name, or (2) transfer of the domain name to the owner of the mark. *Id.* Plaintiff requested that the Court, upon entering default judgment, "order the .ORG domain name registry and any relevant domain name registrar(s) to transfer ownership of the Defendant Domain Name to Plaintiff." (Mem. Supp. at 12.) Specifically, Plaintiff requested that the Court order the Public Interest Registry to change the registrar of record for Defendant Domain Name to Plaintiff's registrar of choice, Network Solutions LLC, and further require Network Solutions LLC to take the necessary steps to have Plaintiff listed as the registrant for the domain name. (*Id.*)

As the Public Interest Registry is located within this judicial district and subject to the Court's jurisdiction, the Court may properly order it to transfer ownership of Defendant Domain Name to Plaintiff pursuant to the ACPA. *See* 15 U.S.C. § 1125(d)(1)(C), (2)(D)(i). The undersigned recommends that the Court order the above steps to transfer Defendant Domain Name to Plaintiff.

### B.    Dissolving Preliminary Injunction and Return of Bond

Second, as outlined above, the Court granted a preliminary injunction in this matter. (*See* Dkt. 22.) The Order required the Public Interest Registry to place Defendant Domain Name on "registryHold/serverHold status" (or otherwise render it nonresolving), and further ordered Plaintiff to post a $500.00 bond and provide a copy of the Order to the Public Interest Registry. (Dkt. 22.) Both the Public Interest Registry and Plaintiff complied with the Order. (*See* Dkts. 27; Mem. Supp. at 5.) Plaintiff requests that upon the transfer of Defendant Domain Name to

12

Plaintiff's registrar of choice, Network Solutions LLC, that the preliminary injunction be automatically dissolved so that the domain name can again become operable. (Mem. Supp. at 12.)

If the Court adopts the undersigned's above recommendation and orders the Public Interest Registry to transfer ownership of Defendant Domain Name to Plaintiff, the preliminary injunction will be rendered obsolete. Furthermore, the Plaintiff's paid performance bond—which is meant to protect a wrongfully enjoined defendant—will no longer serve its purpose if the Court enters default judgment. The undersigned therefore recommends that the Court dissolve the preliminary injunction and order the return of Plaintiff's $500.00 bond.

## V. RECOMMENDATION

For the reasons stated above, the undersigned recommends that this Court enter default judgment against Defendant. Specifically, the undersigned recommends that the Court (1) order the Public Interest Registry to transfer ownership of Defendant Domain Name to Plaintiff by changing the registrar of record to Network Solutions LLC and further ordering Network Solutions LLC to take the necessary steps to list Plaintiff as the registrant for the domain name; (2) dissolve the preliminary injunction entered in this matter; and (3) order the return of Plaintiff's $500.00 performance bond.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

October 29, 2019
Alexandria, Virginia

14